# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:14-cv-00062-FDW

| | |
|---|---|
| BENJAMIN S. MARLOW, | ) |
| Petitioner, | ) |
| v. | ) ORDER |
| CARLTON JOYNER, | ) |
| Respondent. | ) |

**THIS MATTER** is before the Court on an initial review of the claims raised by Petitioner in his pro se petition for a writ habeas corpus, filed pursuant to 28 U.S.C. § 2254. See Rule 4 of the Rules Governing Section 2254 Cases. For the reasons that follow, Petitioner's Section 2254 petition will be denied and dismissed.

## I. BACKGROUND

Petitioner is a prisoner of the State of North Carolina following his conviction by a jury in Cleveland County Superior Court on the following charges: Four counts of first-degree rape; four counts of indecent liberties with a child; four counts of first-degree sex offense with a child; and two counts of incest. On June 29, 2012, Petitioner was sentenced to 140-years and five months' imprisonment. Petitioner appealed and the North Carolina Court of Appeals summarized the procedural history and trial evidence:

> Prior to the summer of 2010, defendant had been living with his father. During late summer of 2010, when defendant was twenty-one years of age, he went to live with his mother and her three daughters, T.A., P.A., and S.A.[1] Because defendant's

---

[1] Because the three daughters were all minors during the commission of the crimes, pseudonyms are used to protect their identities.

1

mother had the children with a man who was not the biological father of defendant, they are his half-sisters. At the time defendant moved in, all of the daughters were 11 years of age or younger.

During defendant's brief tenancy at his mother's house, he became close with his half-sisters. Due to the small size of the house, the living arrangements were such that defendant had to sleep in the living room or the dining room. T.A. and P.A. had their own bedrooms, and S.A. slept in the dining room. The daughters enjoyed having defendant in the house; and when defendant was not working, he would sometimes play games and watch television with the girls.

Throughout the next few months, defendant began inappropriately touching P.A. and T.A. On one occasion, T.A. had come home from trick-or-treating and was watching television with defendant. Around 11:00 p.m., T.A.'s parents told her to go to bed. T.A. then asked that defendant go to her room and cover her up, and defendant agreed. Defendant then lay down with T.A. Sometime thereafter, defendant began to rub T.A.'s leg. He later placed his hand inside of her pants, but over her underwear, and then on her buttocks, inside of her underwear. Before moving out in early 2011, defendant also came into similar contact with P.A., T.A.'s twin sister.

On "fifteen or twenty" more occasions, defendant initiated similar contact with T.A. T.A. testified that defendant continued to get into her bed late at night, place his hands down her pants, and that he began putting his hand up her shirt. T.A. testified that defendant even began placing his finger inside her vagina, causing her discomfort or pain. T.A. also testified that on multiple occasions defendant began rubbing his penis outside of her vagina, and eventually inserted his penis inside of her vagina. The act of defendant placing his penis inside of T.A.'s vagina happened in various places, including multiple times outside in the woods, as well as in the living room.

T.A. also testified that defendant would force T.A. to put his penis inside of her mouth by grabbing her head and telling her to lick his penis. T.A. testified that when this happened, defendant would not ejaculate in her mouth. She knew this because she would see him manipulate his penis and wipe the "white liquid" on his shirt. On other occasions when defendant

would insert his penis into T.A.'s mouth, he would ejaculate. The act of defendant placing his penis inside T.A.'s mouth occurred "five to ten times." At some point after Halloween, T.A. testified that defendant also penetrated her anus with his penis. According to T.A., the anal penetration "hurt worse than him putting his finger in my vagina, but it hurt just about the same as when he put his penis in my vagina."

Throughout defendant's stay, he was able to convince T.A. not to say anything about the aforesaid incidents, because if she did, "he would never get to see her again." However, on 1 March 2011, T.A. reported to a counselor at school that her brother had been touching her private parts and that she was forced to touch his as well. The counselor then contacted the Department of Social Services so a social worker could conduct interviews of T.A. and P.A. Then, on 4 March 2011, a detective from the sheriff's department interviewed T.A. and P.A. and recorded the interviews on DVD. T.A. and P.A. were then examined by a pediatrician who specialized in observing signs of physical and sexual abuse. Upon examination, the pediatrician opined that T.A.'s hymen and anus appeared to have been penetrated with a finger or other object. The pediatrician did not report similar findings for P.A.

On 21 March 2011, the sheriff's detective interviewed defendant about the information they received. On 11 April 2011, defendant was indicted for a sex offense against T.A., leading to his arrest just ten days later. Defendant was eventually indicted and charged with a total of fourteen sex offenses; thirteen against T.A. and one against P.A.

The court of appeals affirmed his criminal judgment in all respects, State v. Marlow, 747 S.E.2d 741 (N.C. Ct. App. 2013), and the Supreme Court of North Carolina denied his appeal after finding that Petitioner had failed to present a substantial constitutional question. State v. Marlow, 752 S.E.2d 493 (N.C. 2013). This federal habeas proceeding follows and Petitioner's claims will be discussed herein.

## II. STANDARD OF REVIEW

When a prisoner files an application for a writ of habeas corpus, a federal court shall not

3

grant the petition if any of the claims presented have already been adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A claim is considered "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree. . ." Young v. Catoe, 205 F.3d 750, 755 n.2 (4th Cir. 2000) (quoting Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)). A state court's adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "It is not enough for us to say that, confronted with the same facts, we would have applied the law differently; we can accord [the petitioner] a remedy only by concluding that the state court's application of the law in his case was objectively unreasonable." See Tice, 647 F.3d at 103 (citing Williams v. Ozmint, 494 F.3d 478, 483-84 (4th Cir. 2007)). "[W]e will not discern an unreasonable application of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'" Id. at 108 (quoting Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006)) (citations and internal quotation marks omitted).

## III. DISCUSSION

**A.     First Claim**

In his first claim for relief, Petitioner contends that his right to be free from Double Jeopardy was violated when the trial court sentenced him upon conviction for statutory rape and incest because the two crimes arose out of the same conduct or transaction. (1:14-cv-00062, Doc. No. 1: Petition at 5).

The Fifth Amendment provides, in pertinent part, that no person shall "be subject for the same offence to be twice be put in jeopardy of life or limb . . ." U.S. CONST. amend. V. "In the context of a single criminal prosecution, the clause 'protects against multiple punishments for the same offense.'" United States v. Ayala, 601 F.3d 256, 264 (4th Cir. 2010) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). "This guarantee simply prevents "the sentencing court from prescribing greater punishment than the legislature intended.'" Id. (quoting Missouri v. Hunter, 459 U.S. 359, 366 (1983) (internal citation omitted). Importantly, the prohibition on Double Jeopardy "does not, however, prohibit the legislature from punishing the same act or course of conduct under difference statutes." Id. at 265 (citing Albernaz v. United States, 450 U.S. 333, 344 (1981)). "Thus, when a defendant violates more than one statute in a single course of conduct, a court may impose multiple punishments without violating the Double Jeopardy Clause if the legislature authorizes it to do so." Id. (United States v. Terry, 86 F.3d 353, 355 (4th Cir. 1996)).

Petitioner raised this argument on direct appeal and the North Carolina Court of Appeals rejected it and the Court finds that this conclusion is not an unreasonable application of federal law as defined by the Supreme Court. Id. § 2254(d)(1). In finding this argument to be without merit, the court of appeals applied the well-settled test as established by the Supreme Court in

5

Blockburger v. United States, 284 U.S. 299 (1932), in which the Court held that the "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304 (internal citation omitted).

In the present case, Petitioner was convicted of the crime of incest and first-degree rape and these crimes were undoubtedly part of the same occurrence or transaction and he was given active sentences for each conviction. Under North Carolina law each of these crimes are set forth in a different statutory provision and each crime requires proof of an element that the other crime does not. The Supreme Court of North Carolina has held that "incest, which requires proof of a familial relationship, is not a lesser included offense of statutory rape." Marlow, 747 S.E.2d at 746 (quoting State v. Etheridge, 319 N.C. 34, 51 (1987)). The Supreme Court further held that a "defendant's rights against double jeopardy were not violated because 'the convictions of statutory rape, taking indecent liberties with a child, and incest . . . are legally separate and distinct crimes, none of which is a lesser included offense of another.'" Marlow, supra at 747 (quoting Etheridge, supra).

A state court's decision on a question of state law is binding on federal habeas review. See Roach v. Angelone, 176 F.3d 210, 217 (4th Cir. 1999) (citing Walton v. Arizona, 497 U.S. 639, 655 (1990), overruled on other grounds by, Ring v. Arizona, 536 U.S. 584 (2002). Federal review of the State court's interpretation can be triggered, however, if the state court's determination of its own law would violate a provision of the Constitution or federal law. See Estelle v. McGuire, 502 U.S. 62, 68 (1991). As this Court has concluded, the State court's determination that the statutory crimes of incest and first-degree rape each requires proof of a

6

different element that the other does not plainly satisfies the Blockburger test. Accordingly, Petitioner's first ground for relief will be denied.

**B.     Second Claim**

Here, Petitioner first repeats his contention that his conviction for both incest and first-degree rape violated his rights to be free from Double Jeopardy. For the reasons previously stated, this argument will again be denied.

Petitioner also contends that he was charged with incest, first-degree sex offense by fellatio, first-degree sex offense with a child under 13-years of age, first-degree sex offense by digital penetration, and first-degree sex offense by anal intercourse. Petitioner argues that "the violation of these statutes were grossly ambiguous." (1:14-cv-00062, Doc. No. 1: Petition at 7). Petitioner's contention is, it appears, that the presentation of these charges to the jury allowed additional testimony which may have prejudiced his defense. This argument was not presented on direct appeal therefore Petitioner has failed to exhaust his state remedies on this issue. See 28 U.S.C. § 2254(b)(1)(A) (providing that no habeas relief may be granted unless the petitioner has exhausted the available remedies in state court).

The Supreme Court has recognized that a federal habeas case may be stayed in certain, limited circumstances to allow the petitioner present the unexhausted claim(s) in state court and obtain a ruling on the merits. However, in Rhines v. Weber, 544 U.S. 269 (2005), the Supreme Court discussed the important limitations on this option:

> Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.

Rhines, 544 U.S. at 277.

Thus, Petitioner's claim may still be "denied on the merits, notwithstanding the failure of the applicant to exhaust remedies available in the court of the State." Id. § 2254(b)(2).

Petitioner's argument here is simply without merit because it raises no reasonable claim that any federal violation occurred when these charges were presented at trial. That the jury may have acquitted him on these charges is of no moment and cannot support federal habeas relief. This claim will be denied.

**C.    Third Claim**

In this final claim, Petitioner presents another claim which he has not submitted to the state courts for review. Petitioner explains that he intends to pursue post-conviction relief on this issue, presumably in state court, in the event that federal habeas relief is denied. (1:14-cv-00062, Doc. No. 1 at 9).[2]

Petitioner contends that he received ineffective assistance of trial counsel because his counsel did not present a medical expert in his defense in an effort to challenge the expert testimony which the State offered from a pediatrician, Dr. Nancy Hendrix, who examined T.A. and P.A. Petitioner also challenges Dr. Hendrix's reliance on "postings off of the internet to illustrate her findings which were not directly from any named or accredited medical journal . . ." Next, Petitioner challenges Dr. Hendrix's testimony which was illustrated with a picture of "a male abused subject who had penetrating trauma repeatedly to his anus to illustrate a female[']s anus, and even stated that the only other thing that could cause laxity in the anus was constipation . . ." (Id. at 8).

The Sixth Amendment to the United States Constitution provides that all defendants

---

[2] The Court finds that proceeding first to federal habeas review before allowing the state to consider this claim is not good cause to excuse nonexhaustion. And for reasons stated herein, the claims are without merit.

charged with a crime have the right to effective assistance of counsel. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial to the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . ." Id. at 689. A petitioner seeking post-conviction relief based on a claim of ineffective assistance of counsel bears a "heavy burden in overcoming this presumption." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id. A "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

9

The court has carefully reviewed the court of appeals opinion which summarized the evidence presented at trial, including testimony from T.A and P.A., and from Dr. Hendrix who was received as an expert in the field of pediatrics and in evaluating child sexual and physical abuse. The Court has also examined relevant portions of the trial transcript which includes testimony from T.A. and P.A. which details numerous instances of explicit sexual encounters with Petitioner, and testimony from Dr. Hendrix's regarding her child medical evaluations of both T.A. and P.A. Based on the evidence presented in this record, the Court finds that it is appropriate to consider the merits of Petitioner's arguments at this time.

Petitioner's claim that his counsel was ineffective in failing to call an expert witness fails on the merits. First, Petitioner does not say how this omission could have changed the outcome of the trial. The testimony presented by T.A. and P.A. as to what they emotionally and physically experienced was overwhelming, and Dr. Hendrix's testimony, which details the child medical evaluations of both of the minor children corroborates the children's testimony. In particular, T.A.'s testimony regarding multiple episodes of vaginal and anal penetration by Petitioner, both digital and penile penetration. In sum, Petitioner cannot demonstrate that the outcome of his trial would have been different had his counsel called an expert and this claim will be denied.

Petitioner next raises a claim that Dr. Hendrix should not have been allowed to present pictures she obtained from the internet, in particular pictures of "a male abused subject" during her testimony to illustrate her findings and conclusions from her child medical evaluations that sexual abuse occurred. Petitioner is either suggesting that his counsel was deficient in failing to object to these pictures or that the trial court erred in its rulings on the evidentiary use of the pictures. Either way, Petitioner is not entitled to relief.

Petitioner's counsel specifically objected to the use of pictures that were obtained from

the internet because they were not obtained from a medical book or journal and that the use of the illustrative exhibits could be inflammatory to the jury. The court noted that if Dr. Hendrix provided a proper foundation then the pictures could be admitted solely for the purpose of illustrating her testimony, and stated that he would withhold ruling on admissibility until such a foundation was laid. (1:14-cv-00062, Doc. No. 1-4: Trial Tr. at 76).[3] During her direct examination, Dr. Hendrix testified that the she obtained the photographs following an internet "medical search" on her computer and that the she intended to use the photographs to provide a better description of the alleged physical and sexual abuse. The photographs were admitted over Petitioner's trial counsel's objection for illustrative purposes. (Id. at 94-95). Based on the foregoing, the Court finds that Petitioner has clearly failed to demonstrate any right to relief under Strickland because a proper objection was made by his counsel and the objection was overruled nor can Petitioner present a credible claim for relief based on trial court error in the admission of the photographs.[4]

Next, Petitioner appears to contest Dr. Hendrix's opinion that the only likely causes of T.A.'s anal trauma were either constipation or the insertion of a foreign object. In this case, T.A. testified to multiple instances where Petitioner subjected her to both digital and penile penetration in her anus. After considering this evidence, the Court finds that these challenges are clearly without merit, whether couched as ineffective assistance of counsel claims or trial court error. If the former, he can demonstrate no right to Strickland relief based on the damning testimony from both of the victims and Dr. Hendrix. If the latter, Petitioner would likely have been procedurally barred from presenting this claim in a state post-conviction proceeding

---

[3] References to the trial transcript are to the page numbers contained in the bottom footer which is produced by the Electronic Case Filing System.
[4] Any such claim of trial court error would likely have been procedurally defaulted in state post-conviction review because the claim was not raised on direct appeal.

because he failed to raise it on direct appeal. In any event, it is the jury's province to assign weight to the testimony of Dr. Hendrix. For these reasons, the claims will be denied.

## IV. CONCLUSION

Based on the foregoing, the Court finds that Petitioner's claims for relief are without merit and his § 2254 petition will be denied and dismissed.

**IT IS, THEREFORE ORDERED** that Petitioner's § 2254 petition is **DENIED** and **DISMISSED with prejudice.** (Doc. No. 1)

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk of Court is directed to terminate this civil case.

**IT IS SO ORDERED.**

Signed: January 12, 2015

Frank D. Whitney
Chief United States District Judge